## Louisville, New Albany and Chicago Railway Co.

### *v.*

### William G. Patchen, Admr.

*Filed at Ottawa June 8, 1897.*

1. Appeals and Errors—*when objection as to relevancy of ordinance is waived.* An objection that an ordinance regulating the speed of railroad trains within corporate limits was admitted in evidence in a personal injury case without proof that the place of injury was within the corporate limits, will be deemed waived on appeal if not interposed at trial.

2. Evidence—*when ordinance is properly refused admission in evidence.* The court may refuse to admit in evidence an ordinance printed in a book which does not appear to be published by the authority of the municipality claimed to have adopted it.

3. Instructions—*must be predicated on the evidence and confined to the issues.* An instruction stating a correct proposition of law may be refused where it does not relate to matters in controversy or the issues raised by the pleadings.

4. Negligence—*question of negligence must ordinarily be left to the jury.* In a personal injury case, whether the plaintiff's intestate was guilty of or free from negligence is a question of fact for the jury; and it is not the duty of the court to say that the existence of a certain state of facts does or does not constitute negligence.

5. Same—*instruction stating what the servants of a railroad may assume may be refused.* An instruction that, as a matter of law, the servants of a railroad company in charge of a train may assume certain things therein specified, and act thereon, without being guilty of negligence, may be refused.

6. Trial—*when instruction to find for defendant must be refused.* An instruction to find for the defendant must be refused where there is evidence tending to prove the plaintiff's cause of action.

*Louisville, N. A. & C. Ry. Co.* v. *Patchen,* 66 Ill. App. 206, affirmed.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Francis Adams, Judge, presiding.

G. W. Kretzinger, for appellant:

It is the imperative duty of persons to use all the faculties they have, on approaching a railroad crossing,

to discover a train, not only by listening for a bell or whistle, but to look out by all means, whether there be a warning board or not to enjoin that duty upon them. *Railway Co.* v. *McKean*, 40 Ill. 236.

A person about to cross a railroad track must look and listen for an approaching train, and it is negligence to omit that duty.    *Railway Co.* v. *Dimick*, 96 Ill. 45.

It is deemed culpable negligence to cross the track of a railroad without looking in every direction that the rails run, to make sure that the road is clear.    *Railway Co.* v. *Bell*, 70 Ill. 102.

A railroad track is in itself a notice and warning of danger, and it is the duty of a person approaching a crossing to look and listen before venturing upon it. *Matta* v. *Railway Co.* 69 Mich. 109.

A traveler who approaches on the highway is bound to know that he must yield precedence to the trains, and that he has no right to expect them to slacken speed, much less to stop, and yield him the priority of passage. *Railway Co.* v. *Walker*, 113 Ind. 202.

Where a party seeks to recover damages for a loss which has been caused by negligence or misconduct, he must be able to show that his own negligence or misconduct has not concurred with that of the other party in producing the injury, and the burden of proof is upon the plaintiff to show, not only negligence on the part of defendant, but also that he exercised proper care,—or, in other words, that he was not guilty of negligence.    *Railway Co.* v. *Grimes*, 13 Ill. 587; *Railway Co.* v. *Patchen*, 16 id. 198; *Railway Co.* v. *Dewey*, 26 id. 255; *Railway Co.* v. *Hazard*, id. 373; *Railway Co.* v. *Yarwood*, 17 id. 509; *Railway Co.* v. *Gretzner*, 46 id. 76; *Railway Co.* v. *Weldon*, 52 id. 294; *Railway Co.* v. *VanPatten*, 64 id. 510; *Railway Co.* v. *Godfrey*, 71 id. 507; *Railway Co.* v. *Harwood*, 80 id. 88; *Railway Co.* v. *Johnson*, 103 id. 512; *Cold Storage Co.* v. *Crow*, 155 id. 74.

A bare scintilla of evidence as to due care is not enough to entitle a party to recover.    The evidence of due care

must preponderate. *Simmons* v. *Railway Co.* 110 Ill. 340; *Bartelott* v. *Bank*, 119 id. 259; *Phillips* v. *Dickerson*, 85 id. 11; *Railway Co.* v. *Lewis*, 138 id. 9.

George W. Plummer, and Wharton Plummer, for appellee:

Whether the deceased exercised reasonable care was a fact to be ascertained by the jury from all the evidence, environment and circumstances of the particular case. *Railway Co.* v. *Then*, 59 Ill. App. 561; *Partlow* v. *Railroad Co.* 150 Ill. 327; *Pullman Car Co.* v. *Laack*, 143 id. 258; *Railroad Co.* v. *Haskins*, 115 id. 304; *Railroad Co.* v. *Byrum*, 153 id. 137; *Clayton* v. *Brooks*, 150 id. 105.

Failure to look and listen when approaching a railroad crossing cannot be said, as a matter of law, to be negligence. These are facts proper for the consideration of the jury in determining the question. *Partlow* v. *Railroad Co.* 150 Ill. 327.

When there is evidence tending to prove the facts alleged in plaintiff's declaration the case should be submitted to the jury. *Railroad Co.* v. *Meixner*, 160 Ill. 328.

Whether or not an ordinance has been repealed by a subsequent ordinance must be shown by the introduction in evidence of such subsequent ordinance. *Railroad Co.* v. *Gilbert*, 41 N. E. 724.

Parties who permit matters to pass unchallenged in the trial court cannot be permitted to urge them as objections for the first time in this court. *Montague* v. *Selb*, 106 Ill. 59.

Per Curiam: This suit was brought by appellee, as administrator of the estate of John M. Rowe, deceased, to recover from appellant damages for the death of his intestate, which occurred March 9, 1891, at the crossing of the railroad and State street, at Ninety-first street, in the city of Chicago. There was a trial ending with a verdict for $5000, upon which judgment was entered.

At the trial plaintiff made proof of the following facts, about which there was no controversy:  Defendant's railroad runs east and west across State street.  The deceased was driving a team with a wagon loaded very high with lumber south on State street toward the crossing, and was walking on the east side of the wagon.  It was about nine o'clock in the morning, and the weather was clear and extremely cold, with a strong wind blowing from the west.  He was by the side of his wagon and between the wheels.  The load of lumber extended high above his head so that he could see nothing toward the west, and nothing could be seen of him from that direction except his feet and legs between the wheels and below the lumber.  He was bundled up, and had on an Alexis fur cap with a red bandana handkerchief tied over it, around his ears and under his chin, and his overcoat collar was turned up.  The railroad was elevated two or three feet above the street, and when near the track he stopped his team and stood for a brief time, looking around, but remained in the same position and did not come out from behind the wagon.  While he stood there, plaintiff's witness John Klostermeyer, who was a little more than a block south of him on State street, could not see him.  After making this stop he started up again and drove upon the crossing.  A passenger train was approaching the crossing from the west, but during all this time he remained in the same position where he could not see it.  When on the crossing the load of lumber was struck by the train and he was killed.  When found, after the accident, the fur cap came down over his ears, so that they were covered both by the fur cap and the handkerchief.  Although within the corporate limits of the city of Chicago, this locality was a sparsely settled, open country, with no houses or buildings near the crossing, and nothing within a block of it to interfere in any manner with sight or hearing.  The railroad track curved toward the north at a point which plaintiff in his testi-

mony fixed at about one hundred and twenty-five yards west of the street, and others of his witnesses were agreed that this curve commenced a block or thereabouts from the crossing. Aside from any obstruction in the way of cars on side-tracks, a train could be seen from the crossing for half a mile. This train was running perhaps thirty or forty miles an hour until near the crossing.

On the questions of obstructions to view by cars on side-tracks and the giving of signals there was some conflict in the evidence, if it can be said that the evidence for plaintiff tended to prove that signals were not given. The side-tracks began beyond the point where the track commenced to curve toward the north, and extended away from the crossing toward the city of Chicago. The evidence for plaintiff was, that there were cars standing on the side-tracks between one and two blocks from the crossing and extending north, while witnesses for the defendant testified that there were no cars on the side-track nearer than two and one-half or three blocks from the crossing, and some stated the distance much farther. On the part of plaintiff, E. C. Keller, a gardener, who was in his house with the doors and windows closed, one block and a half south of the crossing, testified that he heard no bell or whistle; and Joseph Radke, who was in his barn watering a horse more than a block south from the crossing, heard no bell or whistle. The latter witness, however, did not hear the train at all, nor the crash of the collision, nor the alarm whistle which both parties proved was blown when nearing the crossing. The evidence for defendant was that the whistle was sounded at the regular whistling-board, and that the bell was rung as required by the statute; that when the deceased was seen near the crossing, the fireman, who was on the side of the engine where he could see him, called "whoap" to the engineer, who shut off the steam; that the fireman, seeing the team had stopped, called out "all right;" that the engineer then put on steam again

and resumed the former rate of speed, and that when he saw that the deceased had started up and was driving on the track he applied the air-brake, reversed the engine, whistled the alarm whistle, and did all that he could to avert a collision. The evidence as to whistling at the whistling-board, giving the alarm whistle and the efforts to stop the train came from passengers on the train as well as employes of defendant in charge of it.

On appeal the Appellate Court affirmed the judgment, Mr. Justice Waterman dissenting on the ground that the negligence of the deceased in failing to look for the train, as he might have done, was a bar to a recovery for his death.

It is first claimed that the trial court erred in admitting in evidence an ordinance of the city of Chicago limiting the speed of railroad trains to ten miles per hour. The objection as made here is, that there had been no proof that this locality was within that municipality. When the ordinance was offered counsel for defendant objected to its introduction, and stated the ground of his objection to be, that the clause proposed to be read had been repealed by a subsequent ordinance. This was the only objection made, and no question was raised in the trial court in any manner as to the relevancy of the ordinance. Under such circumstances the objection must be regarded as waived.

Defendant offered in evidence an ordinance which it was claimed operated to repeal the provision limiting speed to ten miles an hour, and permitting speed in that district of thirty miles an hour. This ordinance the court refused to admit, holding, as we think correctly, that it did not repeal the clause in question because of the failure of defendant to comply with its provisions. Besides, the ordinance that was offered was printed in a book which did not purport to be published by authority of the city council of Chicago, and it was properly rejected for that reason.

At the request of plaintiff the court gave to the jury the following instruction:

1. "The court instructs the jury that by the laws of this State every railroad company is required to have a bell and a steam whistle placed and kept on each locomotive engine, and to cause the same to be rung or whistled at the distance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and to keep the same ringing or whistling until such highway is reached. It is a question for you to determine, from the evidence, whether the law as above stated was complied with by the defendant, and it is also for you to decide, from the evidence, whether John M. Rowe, the deceased, was or not in such condition and so situated that he could have heard the bell or whistle if the former was rung or the latter sounded."

The defendant excepted to the giving of this instruction and now claims that it is erroneous. It is said that the instruction directs the jury that if the bell was not rung or the whistle sounded the railroad company was liable. We do not so understand the instruction. It merely informs the jury what the law requires, and then declares that it is a question for the jury to determine, from the evidence, whether defendant complied with the law, but there is no intimation in the instruction that a failure to comply with the law would render the defendant liable, nor is there anything in the instruction which would excuse the deceased from that care and caution imposed by the law if he was not able to hear the bell or the whistle on account of his ears being wrapped up or on account of his position by the side of the wagon. If the deceased was in such a condition and so situated that he could not hear the bell or whistle that would not excuse him from the exercise of due care and caution, and there is nothing in the instruction which intimates any thing of that character. We do not think the instruction was artfully drawn nor can it be regarded as a model of

perspicuity, but at the same time we do not think that it lays down an incorrect rule of law nor was it calculated to mislead the jury.

It is next claimed that the court erred in modifying instruction No. 15 and refusing Nos. 4 and 5. The modification complained of was the striking out the following: "The jury are instructed that where a railroad crosses a common road on the same level, those traveling on either have a legal right to pass over the crossing, but a moving train, from its force and momentum, will have the preference of crossing first." If there had been a controversy between the deceased and the railroad company in regard to which one of the parties was entitled to the preference in crossing, or if there was any issue of that character presented by the pleadings, then the court might properly have been called upon to instruct the jury on that question; but as we understand the record there was no question of that character involved in the case. The railroad company did not claim that the deceased was struck by its train because it was entitled to the track and the deceased had no business there when the collision occurred, nor was it claimed on behalf of the deceased that he was entitled to a preference in crossing, and in asserting his rights he was struck and killed. No such question was involved in the case, and in the absence of such a question the court could not be required to give an instruction. Moreover, if an instruction on that branch of the case was required, the defendant's instruction No. 7, which was given, would seem to be all that was needed. That instruction was as follows:

"The court instructs the jury that both the deceased and the railway company have an equal right to cross the street at the point where the accident happened, and that the law imposes on both parties the duty of using reasonable and prudent precaution to avoid accident and danger; and while it was incumbent upon the railway company, in running its train on the occasion referred

to, to give the required signal by ringing the bell or sounding the whistle eighty rods before reaching the crossing, it was also the duty of the deceased to look out for the approach of the train and to observe all reasonable precautions before attempting to cross the track."

The fourth refused instruction directed the jury, in substance, that if there were on the side-tracks where the accident happened cars which obstructed the view of the approaching train, that fact would impose upon deceased the duty to exercise a higher degree of care for his personal safety in ascertaining whether it was prudent to cross, and if he failed to do so plaintiff could not recover. The law is well settled that plaintiff could not recover unless the deceased exercised due and proper care for his safety,—in other words, unless the deceased was free from negligence which contributed to the injury a recovery could not be had. But whether the deceased was guilty of negligence or whether he was free from any negligence whatever were questions of fact for the jury, and it was no part of the duty of the court to inform the jury that the existence of one fact or another fact would defeat a recovery. The instruction was liable to this objection, and for that reason, if for no other, the court did not err in refusing to give it.

Refused instruction No. 5 was as follows:

"The court instructs the jury that the servants in charge of the defendant's engine and train which struck the deceased had a right to assume that he was rational, and that he would exercise reasonable care and caution to keep himself out of danger; and if the jury believe, from the evidence, that when the persons in charge of the engine and train first came in sight of the deceased he was so far removed from the track as to be free from danger of collision, then they had a right to assume that he would remain at such safe distance."

An instruction somewhat similar was held to be a correct statement of the law in *Chicago, Rock Island and*

*Pacific Railroad Co.* v. *Austin*, 69 Ill. 426, but in later cases the tendency of the decisions has been to the effect that the matters and things stated in the instruction which the servants of the railroad company might, as a matter of law, assume, were questions of fact for the determination of the jury. In *Chicago and Alton Railroad Co.* v. *Kellam*, 92 Ill. 245, where an action was brought to recover for the killing of an animal through the negligence of the railroad company on a railroad crossing, it was held that where an engine-driver sees or can see in time to slacken the speed of his train, a lot of cattle crossing the railroad track upon a highway, but does not stop the train or slacken its speed, and kills an animal, this will establish negligence on his part, and the railroad company will be liable. In *Pennsylvania Co.* v. *Frana*, 112 Ill. 398, it was claimed that the court erred in refusing to give an instruction which read as follows: "The jury are instructed that those in charge of the train which collided with the plaintiff were not bound to stop the same in anticipation that plaintiff might drive upon the track;" but the court held otherwise, and in disposing of the question said (p. 405): "It was for the jury to determine, from all the evidence, whether those in charge of the train were guilty of negligence in not stopping the train before the collision occurred. Cases might occur where a railroad would be under no obligation whatever to stop its train, and, on the other hand, cases might arise where a failure to do so would be gross negligence. Each case must be determined by its facts, and those facts are for the jury." In *Illinois Central Railroad Co.* v. *Slater*, 139 Ill. 190, a similar question arose, and in disposing of it the court said (p. 199): "It is next claimed that the court erred in refusing defendant's instructions Nos. 17 and 18. No. 17 in substance informed the jury that it was not a want of ordinary care for a train of cars to approach a highway crossing at its usual speed, although there is a team approaching. On the trial of a case of this character

negligence is a question of fact for the jury to determine from the evidence, and it is not the province of the court to tell the jury, in an instruction, that one thing is negligence and another not, but the jury should be left free and untrammeled to determine, from all the evidence, who has been negligent and who has not. No. 18 informed the jury that an engineer has a right to presume that a team approaching a crossing will stop, etc. What has been said in regard to No. 17 will also apply here. It was improper for the court to say, as a matter of law, that the engineer might presume anything. Presumptions had nothing to do with the question involved."

What was said in the case last cited applies here. The question before the jury was whether the deceased lost his life through the negligence of the railroad company in running its train over the highway, or whether the death of deceased was caused by his negligence in failing to exercise ordinary care in crossing the railroad track. The question was one purely of fact, and whether the servants of the railroad company in charge of the train might assume one thing or another was a question for the jury to determine from all the evidence, and not a question of law, and had the instruction submitted the question as one of fact it might be sustained, but as the instruction directed the jury, as a question of law, that the servants of the railroad in charge of the train might assume certain things therein specified, it was erroneous.

It is also claimed that the court erred in refusing to instruct the jury to find for the defendant. If there had been no evidence whatever tending to prove the plaintiff's cause of action the instruction might have been given; but where there is evidence tending to prove the cause of action, as it is apparent there was here, it is the duty of the court to refuse an instruction of that character and leave the jury to pass upon the weight of the evidence.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*