RAPHAEL ROSENTHAL *et al.* Exrs., Defendants in Error, *vs.* THE CHICAGO AND ALTON RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 26, 1912.*

1. NEGLIGENCE—*general rule upon the subject of ordinary care.* The general rule upon the subject of ordinary care is, that if one exercises the degree of care required of a reasonably prudent man he is guilty of no negligence, but if he fails to do so he is guilty of negligence and cannot recover in case he is injured.

2. SAME—*when question of contributory negligence is for the jury.* Whether the deceased was guilty of contributory negligence in stepping in front of a backing locomotive is a question of fact for the jury, even though the evidence shows he was old, had poor eyesight and wore a cap with flaps drawn over his ears, where it also tends to show that it was night, that the engine was running quietly, without ringing a bell or sounding a whistle and without having a bright light on the tender, as required by ordinance.

3. SAME—*a railroad company is bound to take notice of ordinance requiring crossing gates.* Clause 27 of section 1 of article 5 of the Cities and Villages act authorizes a municipal corporation to provide, by ordinance, that a railroad company shall erect and operate gates at crossings, and as the statute does not require express notice to the railroad company, such company is bound to take notice of such ordinance.

4. SAME—*when an ordinance concerning operation of crossing gates is admissible.* The fact that an ordinance requiring crossing gates to be operated from seven o'clock A. M. to ten o'clock P. M. was passed after the gates had been installed and were being operated by the company does not render the ordinance inadmissible in an action for damages for an injury occurring after six o'clock P. M., even though the company had never operated the gates

after six o'clock P. M. and it is not shown to have had notice of the ordinance.

5. SAME—*"due care and caution" is a relative term.* "Due care and caution" is a relative term, and what is required to constitute due care and caution in a particular case depends upon all the conditions and circumstances surrounding the person at the time he is called upon to act.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BLINN & COVEY, (SILAS H. STRAWN, of counsel,) for plaintiff in error.

BEACH & TRAPP, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The executors of the last will and testament of Silas Rosenthal, deceased, recovered a judgment in the circuit court of Logan county against plaintiff in error in the sum of $2500 for the death of Rosenthal, caused by being struck by a tender attached to plaintiff in error's engine while crossing the railroad tracks over Pulaski street, in the city of Lincoln. On appeal to the Appellate Court for the Third District the judgment was affirmed. A writ of *certiorari* was issued by this court, and the case has been brought here for review.

The first count of the declaration charges plaintiff in error with carelessly and negligently running an engine, with tender attached, over and across Pulaski street and striking deceased, who was exercising ordinary care for his safety, so severely injuring him as to cause his death. Other counts of the declaration charge the violation of an -ordinance then in force requiring plaintiff in error to construct and maintain at certain street crossings (among them

Pulaski street) gates extending across both sidewalks and the street, which shall be under the control of a competent watchman and shall be operated at all times between the hours of seven o'clock A. M. and ten o'clock P. M.; also the violation of ordinances limiting the rate of speed of any locomotive, engine, car or train, other than a passenger train, to six miles per hour within the limits of the city, and requiring all locomotives, railroad cars and trains, while in motion in the night-time, to have a conspicuous bright light shining in the direction in which the train or car is moving. The declaration also charges that plaintiff in error did not ring the bell or blow the whistle of said engine as required by statute, and failed to place a brakeman or other employee on the rear of the tender to warn persons who might be crossing the tracks, of the approach of the engine. It is further charged that plaintiff in error permitted a train of freight cars to remain on the west side-track and to extend within thirty feet of said Pulaski street, and permitted the right of way on the west side of the track south of Pulaski street to be used as a lumber yard, where there were large piles of lumber to the height of ten feet or more, extending three hundred feet to the south, and also a large pile of sewer tile to the height of ten feet and thirty feet in length, all of which obstructed the view of the track for a great distance as one approached the crossing from the west.

At the close of plaintiffs' evidence, and again at the close of all the evidence, plaintiff in error asked that the jury be instructed to return a verdict of not guilty, which was refused. The refusal to give this instruction is assigned as error. It is also contended that the ordinance requiring the gates over the sidewalks and street at the crossing to be operated from seven o'clock A. M. to ten o'clock P. M. was improperly admitted in evidence, and that the court erred in refusing instructions offered by the plaintiff in error.

The evidence discloses that plaintiff in error's railroad runs through the city of Lincoln in practically a north and south direction, and consists of two tracks at the crossing and two side-tracks south of the crossing. Sangamon street is west of and parallel with the railroad. Pulaski street runs east and west and crosses the railroad and Sangamon street. Deceased lived on Sangamon street south of Pulaski street. He was about seventy-five years of age and had defective eyesight, having a cataract over each eye. The sight of one eye was totally obscured and the other materially affected. While he had difficulty in recognizing persons and objects at a distance, he could see to read and write, went about unattended and was able to conduct his business of buying and selling horses and mules. Shortly after six o'clock on the evening of December 7, 1909, deceased left his home for the purpose of going to a cigar store on Pulaski street, east of the railroad tracks, where he usually spent his evenings. He was alone and had the flaps of the cap he was wearing pulled down over his ears. A freight train had arrived in the yard of plaintiff in error and was left standing on the west side-track, south of the crossing. The engine, with the tender attached, was backing north on the east main track at a rate of speed variously estimated by the witnesses at from six to ten miles per hour. When deceased approached the crossing on the south side of Pulaski street he left the sidewalk and started diagonally across the tracks to the north side of the street. As he stepped on the east track the tender struck him and injured him so severely that he died about an hour later.

It is contended by plaintiff in error that the deceased, being an old man with defective eyesight and having his cap pulled down over his ears, was guilty of contributory negligence in attempting to cross the street unattended and without looking and listening carefully for the approach of a train, and hence no right of recovery exists. The accepted rule of law upon the question of negligence is, that

if one exercises the degree of care required of a reasonably prudent man under the circumstances he is guilty of no negligence, but if he fails to do so he is guilty and cannot recover. (*Kreiger* v. *Aurora, Elgin and Chicago Railroad Co.* 242 Ill. 544.) The fact that deceased stepped in front of the moving tender and was killed does not necessarily imply that he was guilty of negligence. Whether or not he exercised the degree of care required of him must be determined from a consideration of all the circumstances leading up to the accident. For more than twenty-five years he had lived in the city of Lincoln and during all of that time had resided in the same house on Sangamon street, a short distance from the crossing where he was killed. His place of business was on Pulaski street, east of the tracks. He was familiar with the crossing and the movement of trains, having crossed there as he went to and from his place of business and the cigar store where he usually spent his evenings. Three witnesses saw deceased at the time he was struck by the engine. They were all near him and two of them were going in the same direction, intending to pass over the tracks at the same crossing. They testify that no bell was rung or whistle sounded as the engine approached the street crossing. One of them testified he saw a dim light on the tender but the other two said they saw no light. According to their testimony the engine was not making a noise that was noticeable and was moving at a speed of from eight to ten miles an hour. The two witnesses who were behind deceased, going in the same direction for the purpose of passing over the tracks, neither heard nor saw the engine approaching until it was at the crossing and just at the time it struck the deceased. The testimony of these witnesses that no bell was ringing or whistle sounding was corroborated by the testimony of other witnesses who were near the place of the accident. There was testimony on the part of plaintiff in error in conflict with this testimony in some respects, and especially

upon the question of ringing the bell, but the weight of the evidence and the credibility of the witnesses were questions for the jury. If, as appears to be the case, the jury believed the witnesses who testified that the engine was running at a speed in excess of that allowed by the ordinance, that no signals were given, and that if there was a light on the tender it was not a "conspicuous bright light," as required by the ordinance, they were warranted in finding a verdict against plaintiff in error unless it appeared deceased was not in the exercise of due care and caution for his own safety. Notwithstanding his age and impaired eyesight deceased had a right to use the street in crossing over the railroad tracks, but in doing so he was required to exercise reasonable care and caution in view of all the circumstances existing. It cannot be said, as a matter of law, that it was the duty of deceased to stop and look or listen for an approaching engine or train, and that if he failed to do so he was guilty of such negligence as to prevent a recovery. It does not appear from the evidence that deceased failed to exercise such sight as he had and his sense of hearing. It is true, his eyesight was bad and he had the flaps of his cap pulled down over his ears, but it cannot be said, from these circumstances, that he was not in the exercise of such caution as to have enabled him to discover the approaching engine if it had been running at a lawful rate of speed, with a "bright conspicuous light" on the rear end and the bell ringing or the whistle sounding. The deceased had a right to assume plaintiff in error would obey the ordinances and statute by giving the proper warnings when approaching a crossing, and it cannot be said that if it had done so the accident would not have been avoided. Under numerous decisions of this court we think whether the deceased was guilty of negligence was a question of fact properly submitted to the jury. *Henry* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 236 Ill. 219; *Dukeman* v. *Cleveland, Cincinnati,*

*Chicago and St. Louis Railway Co.* 237 id. 104; *Winn* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 239 id. 132.

It is also contended that the ordinance requiring plaintiff in error to construct gates at the crossing and operate them from seven o'clock A. M. to ten o'clock P. M. should not have been admitted in evidence. Gates had been placed at the crossing on Pulaski street some years before the passage of the ordinance in March, 1907, and were operated from seven o'clock A. M. to six o'clock P. M. The requirement of the ordinance of 1907 that the gates be operated until ten o'clock P. M. appears never to have been complied with by plaintiff in error, but it ceased operating them at six o'clock P. M., the same as it had done prior to the passage of that ordinance. Plaintiff in error insists the admission of this ordinance in evidence was erroneous, on the principal ground that no notice had been given it of the passage of the ordinance, and it was therefore not bound to comply with it. Paragraph 99 of chapter 114 of Hurd's Statutes of 1911 makes it the duty of a railroad company to place and retain a flagman at any street where it is crossed by the railroad, upon being given sixty days' notice by the authorities that a flagman is necessary, and provides a penalty of $100 per day for refusing or neglecting to do so. In *Village of Altamont* v. *Baltimore and Ohio Southwestern Railway Co.* 184 Ill. 47, it was held the power to require a flagman at a crossing cannot be exercised by resolution but must be exercised by the adoption of an ordinance. Under clause 27 of paragraph 62 of the Cities and Villages act authority is conferred to require railroad companies to keep flagmen at railroad crossings of streets "and provide protection against injury to persons and property in the use of such railroads." Under this provision there can be no doubt of the power of the municipal authorities to require gates to be installed where it appears necessary to protect persons and property from in-

jury. The legislature placed no provision in the act requiring notice to be given the railroad company of the passage of an ordinance for the installation of gates at crossings, and it is not for courts to read any such requirement into the statute. The ordinance introduced in evidence was passed and published more than two years before the injury occurred for which this suit was brought, and we are of opinion plaintiff in error was bound to take notice of it and was bound by it.

· But it is insisted that the ordinance was never complied with by operating the gates after six o'clock P. M.; that deceased knew this, and therefore was not authorized to assume that because the gates were up at the time he attempted to cross the tracks, which was a few minutes after six o'clock, no train or engine was approaching. Conceding that the gates being up at that time did not authorize deceased to assume, from that fact, that no engine was approaching the crossing, it was none the less negligence in plaintiff in error to fail to comply with the ordinance, and it cannot be said that negligence was not a contributing cause to the injury. While, in the absence of any other negligence, it might be the failure of plaintiff in error, under the circumstances, to close the gates on this particular evening would not have been, alone, sufficient to predicate a liability upon, it was a circumstance to be considered in connection with other negligent acts charged, and we think the admission of the ordinance was not erroneous. Other objections made to the ordinance are not of sufficient merit to require discussion.

Plaintiff in error complains of the refusal of the court to give the following instruction:

"The court instructs the jury that if you believe, from the evidence, that Silas Rosenthal was, at the time of receiving the injuries complained of, seventy-five years old, and that his eyesight, by reason of cataracts growing over his eyes or from other causes, had become seriously im-

paired as to render him incapable of seeing moving objects a short distance from him so as to protect himself, and you further believe, from the evidence, that he was familiar with the railroad crossing over Pulaski street and knew that it was a place where engines and cars frequently passed across said street, then the law required of him (if unattended) the duty of being more careful in ascertaining whether an engine was approaching than if he was in possession of unimpaired eyesight."

The law requires that one shall always use due care and caution for his own safety. But "due care and caution" is a relative term, and what is required to constitute due care and caution depends upon all the conditions and circumstances surrounding the person at the time he is called upon to act. What would be due care and caution if done by one person might be negligence if done by another. Age, defective vision or hearing, or other infirmity, are circumstances to be considered by the jury in determining whether due care and caution have been exercised. The existence of one or more of these infirmities does not require a higher degree of care and caution than in the case of one having no infirmities. In both instances the parties must exercise reasonable care and prudence to avoid injury, and while under one set of circumstances what would meet the requirement would not do so under other conditions or circumstances, no conditions require of a person more than the exercise of reasonable care for his safety. Whether, under all the facts and circumstances shown by the proof, an injured party was in the exercise of reasonable care and caution is usually a question of fact for the jury. *Louisville, New Albany and Chicago Railway Co.* v. *Patchen,* 167 Ill. 204; *Chicago, Burlington and Quincy Railroad Co.* v. *Pollock,* 195 id. 156.

We find no error in the record requiring a reversal of the judgment of the Appellate Court, and it is therefore affirmed.                                        *Judgment affirmed.*