DIETRICH M. E. BRUN, Appellee, *vs.* THE P. NACEY COMPANY and THE CHICAGO CITY RAILWAY COMPANY, Appellants.

*Opinion filed December 16, 1914—Rehearing denied April 7, 1915.*

1. NEGLIGENCE—*when plaintiff must prove ordinance imposing the duty upon a street railway company to repair street.* Where the declaration, as against the defendant street railway company, counts upon a duty imposed by ordinance to keep the portion of the street occupied by it in good repair, and not upon any common law duty, the plaintiff must prove that there was an ordinance imposing such duty at the time and place of the injury.

2. SAME—*when plaintiff must show that place of injury was within provision of the ordinance.* Where an ordinance authorizes the construction of a street railway along a certain street "to the present limits of the city," and requires the company to keep the portion of the street occupied by it in good repair, it is incumbent upon the plaintiff, if he relies for recovery upon a breach of such duty, to prove that the locality where the injury occurred was not only upon such street but also within the limits of the city when the ordinance was passed, as courts do not take judicial notice of such matters.

3. SAME—*when an unproved fact is not supplied by stipulation.* An unproved fact that the place where the plaintiff drove into a depression in the street between the defendant street railway com-

267 − 23

pany's tracks was within the city limits in the year 1858, when an ordinance imposing a duty to keep the street in repair was passed, is not supplied by a stipulation that at the time of the injury, which occurred in 1906, the defendant was operating a double-track electric railway at the place where the injury occurred.

4. SAME—*what provision of general ordinance does not show a duty to repair street at particular place.* A general ordinance requiring all corporations operating street railroads in the city "to keep in good repair such portions of the streets as they severally have agreed or may agree with said city so to keep in repair," does not show a duty by a particular street railway company to keep a street in repair at any particular place, in the absence of proof of an agreement to do so.

5. SAME—*effect of acts of 1859 and 1865, relating to Chicago City Railway Company.* The acts of 1859 and 1865, relating to the Chicago City Railway Company, conferred no right upon that corporation to occupy any of the streets of the city of Chicago but expressly provided that such right could be acquired only from the city council, with such terms and conditions, rights and privileges as the council had prescribed or might prescribe.

6. SAME—*when an instruction as to right of person to assume that a street was reasonably safe for travel is improper.* An instruction stating that if the plaintiff was traveling over a certain street in the exercise of ordinary care for his own safety, then, in the absence of knowledge to the contrary, he had a right, as a matter of law, to presume that the street was reasonably safe for the purposes of ordinary travel, is improper, where the defendants are a street railway company and a contractor, as in such case the question of what the plaintiff might presume as respects the performance by such defendants of any duties they might owe is a question of fact and not of law.

FARMER and CARTER, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

AMOS C. MILLER, and J. HOMER SULLIVAN, for appellant the P. Nacey Company.

CHARLES LEROY BROWN, (LEONARD A. BUSBY, JOHN E. KEHOE, and WARNER H. ROBINSON, of counsel,) for appellant the Chicago City Railway Company.

JAMES L. BYNUM, and EDWARD MAHER, (GUERIN, GALLAGHER & BARRETT, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Dietrich M. E. Brun, brought this action on the case in the superior court of Cook county against the appellants, the P. Nacey Company and the Chicago City Railway Company, to recover damages for personal injuries received on October 15, 1906, alleged to have been caused by the concurrent negligence of the defendants. Upon a trial the jury returned a verdict finding defendants guilty and assessing the damages at $8500. The plaintiff remitted $2500 from the damages assessed by the jury and the court entered judgment for $6000 and costs. The defendants prosecuted separate appeals to the Appellate Court for the First District, where the appeals were consolidated. The Appellate Court being of the opinion that the judgment was clearly too large, even after the *remittitur,* ordered that the judgment should be affirmed only on condition that plaintiff would remit a further sum of $2000. The *remittitur* was entered and the judgment was thereupon affirmed to the amount of $4000 and interest, one of the justices dissenting. The court then granted a certificate of importance and appeals to this court, which were perfected, and the appeals have been consolidated.

The plaintiff, in the afternoon of October 15, 1906, while driving a one-horse express wagon in a walk or jog-trot on Archer avenue, in the city of Chicago, near the intersection with Keeley street, was thrown from the wagon to the pavement in going through a depression in the street, two feet wide, extending from the north curb to the middle of Archer avenue and variously estimated by the witnesses at from ten inches to two feet deep. The defendant the Chicago City Railway Company operated an electric street railway on double tracks on Archer avenue, and the street

was paved with asphalt from the curb to each side of the railway tracks and between the tracks with granite blocks. The defendant the P. Nacey Company, by the payment of $30 to the city of Chicago, secured a permit on September 7, 1906, to make an excavation at the place of the accident for the purpose of connecting drainage with the sewer in the middle of the street, and made the excavation on or about September 10, 1906, by cutting the asphalt in sections along the line of the trench, removing the granite blocks and throwing out the dirt. After laying the drain the trench was filled and the surface was left slightly higher than the surface of the street. The permit required the P. Nacey Company to re-fill the trench and tamp the dirt in doing so. The evidence for the plaintiff tended to show that the filling of the trench was not properly done; that soon afterward the dirt began to sink, making the depression into which the plaintiff drove, and that he drove into such depression between the tracks of the railway.

There were five counts in the declaration, and demurrers were sustained to the fourth and fifth and issues were formed on the first, second and third, which charged the P. Nacey Company with liability on account of negligently failing to properly fill the trench, and charged the Chicago City Railway Company with liability on account of a failure to keep so much of the street as was occupied by it in good repair and condition, as required by ordinances of the city of Chicago set out in the declaration, together with other alleged ordinances, licenses and agreements not set out therein, and in connection with certain acts of the legislature.

The declaration being based upon an alleged duty of the Chicago City Railway Company, created by ordinance of the city, to repair the street, and not upon any common law duty, the question going to the merits of the case, so far as that company is concerned, is whether any ordinance of the city imposed such a duty. Of course, it was incumbent

upon the plaintiff to sustain the declaration by proof of such an ordinance, and the only ordinance offered in evidence containing such a condition was passed in 1858. That ordinance authorized Henry Fuller, Franklin Parmalee and Liberty Bigelow, their executors, administrators and assigns, to lay and operate a single or double-track railway, to be operated with animal power, along certain streets, one of them being, "commencing at State street at the junction of Archer road, thence along said Archer road to the present limits of the city." That ordinance required the persons named therein to "keep such portion of the respective streets as shall be occupied by their street railway, or either of them, in good repair and condition during the whole time that the privileges hereby granted to said parties shall extend." To bring the locality within the ordinance so as to create a duty to keep the place where the plaintiff was injured in good repair and condition it was necessary for him to prove that Archer avenue, at Keeley street, was within the limits of the city in 1858, since courts do not take judicial notice that a certain locality is within the limits of a certain city. (*Dougherty* v. *People*, 118 Ill. 160; *Gunning* v. *People*, 189 id. 165.) There was no proof from which an inference of such fact could result. It was stipulated at the trial that the railway company was, when the injury to plaintiff occurred, operating a double-track electric street railway on Archer avenue, south-west from State street, to the city limits, passing Keeley street, and had been so operating the same for many years prior thereto, but that was not an admission, either in terms or legal effect, that such railway was constructed or authorized to be constructed under the ordinance of 1858, or that such railway was in existence in 1858, or that the company was subject to the provisions of that ordinance in regard to keeping the streets in repair.

The other ordinance was section 1945 of the general ordinances of the city of Chicago of 1905, as follows:

"Every person or corporation operating a street railroad in the city shall keep the tracks of his or its road in such a condition that such tracks shall not at any time be elevated above the surface of the streets on which they are laid, and so that vehicles can easily and freely at all times cross such tracks at all points, in any direction, without obstruction. They shall also keep in good repair such portions of the streets as they severally have agreed or may agree with said city so to keep in repair." This section imposed no duty upon the Chicago City Railway Company to keep in good repair any portion of a street except such portions as it had severally agreed or might agree with the city to keep in repair, and, of course, it had no tendency to prove that any agreement had been made. The requirement that tracks should not at any time be elevated above the surface of the streets on which they were laid, so that vehicles could easily and freely at all times cross the tracks, had no relation to the question of keeping the roadway in repair; and this is especially so in view of the subsequent requirement to keep such portions in repair as the companies had agreed or might agree with the city to keep in repair.

The statutes relied upon were enacted in 1859 and 1865. The act of 1859 (Laws of 1859, p. 530,) constituted Franklin Parmalee, Liberty Bigelow, Henry Fuller and David A. Gage, and their successors, a corporation by the name of Chicago City Railway Company, for a term of twenty-five years, and authorized the corporation to construct, maintain and operate a single or double-track railway in the city of Chicago, within the then present or future city limits, in the south and west divisions of the city, as the common council of said city had authorized the corporators, or any of them, or should authorize such corporation so to do, in such manner and upon such terms and conditions and with such rights and privileges as the common council had prescribed, or might by contract with said parties, or any or either of them, prescribe. All the rights and privileges

granted to Parmalee, Bigelow and Fuller were affirmed, and it was provided that such privileges should pass to and become vested in the corporation. That act did not limit the authority to construct and operate its railways to the then present limits of the city, but contemplated extensions to the future limits upon such conditions as the common council might prescribe, which necessarily included conditions as to keeping the streets in repair. The act of 1865 was amendatory and extended the duration of the life of the corporation to ninety-nine years, with precisely the same provisions as before, concerning the occupation of the streets upon such terms and conditions as had been or might be prescribed by contract.

The fact that the rights and privileges granted to Fuller, Parmalee and Bigelow by the ordinance of 1858 passed to the corporation and subjected it to the conditions of that ordinance has no tendency to prove that the locality where the plaintiff was injured was within the city limits in 1858 or that it came within the terms of the ordinance. The acts of 1859 and 1865 conferred no right upon the corporation to occupy any of the streets of the city but expressly provided that such right could be acquired only from the council, with such terms and conditions, rights and privileges as the council had prescribed or might prescribe. In the case of *Blair* v. *People*, 201 U. S. 400, in which the ordinance of 1858 and the acts of the General Assembly were under consideration, it was expressly stated (p. 460) that what was acquired by the act of 1859 was "the right to be a corporation for the period named and to acquire from the city the right to use the streets upon contract terms and conditions to be agreed upon." Of the act of 1865 it was said (p. 465): "It has the effect to extend the life of the corporation to ninety-nine years and to authorize the use of the streets of Chicago with the consent and upon the terms agreed upon with the council." Whether the railway tracks were laid in Archer avenue, at Keeley street, under

the ordinance of 1858, which required the corporation to keep the street between its tracks in repair, or some other ordinance lacking such a condition or with different terms and conditions, was not proved. The duty alleged to have been created by the ordinance of 1858 to keep the locality of the injury in repair, which was the foundation of the action, could only be established by showing that the locality was within the terms of the ordinance, and the record is barren of any evidence of that kind.

The accident occurred in the middle of a bright day, on a street not crowded or obstructed and with nothing to prevent the plaintiff from seeing the roadway ahead of him nor anything to distract his attention, and the depression was two feet wide and from ten to twenty-four inches deep. It was a material question whether the plaintiff, in the exercise of due care, could have failed to see the condition of the street and whether he was guilty of negligence in driving into it. The sixth instruction related to that question and was as follows:

"The court instructs the jury, as a matter of law, that if they believe, from the evidence, that the plaintiff, Dietrich Brun, went upon a public street in the city of Chicago, namely, Archer avenue near Keeley, and traveled over the same, and while so traveling was in the exercise of ordinary care for his own safety, then the court instructs the jury that in the absence of knowledge of the defect or state of disrepair of Archer avenue, if the same was defective or in the state of disrepair as alleged in the declaration, then the court instructs the jury, as a matter of law, that the plaintiff had a right, as a matter of law, to presume that the said Archer avenue was reasonably safe for the purpose of ordinary travel."

This instruction advised the jury that if the plaintiff was traveling over Archer avenue in the exercise of ordinary care for his own safety, then, in the absence of knowledge of the defect, he had a right, as a matter of law, to

presume that the avenue was reasonably safe for the purpose of ordinary travel. As applied to this case for the purpose of establishing a right to a recovery, that could only be so if the plaintiff, as a matter of law, had a right to presume, as against the defendants, that the P. Nacey Company had complied with the condition of the permit, by which it assumed the duty properly to fill the trench, and that the Chicago City Railway Company had performed the duty created by its contract with the city to keep the streets between its tracks in good repair. Such a presumption, of course, does not arise as an inference of fact from common experience so uniform that the court would be justified in advising the jury to adopt such a presumption. It is a fact of which no one can be ignorant, that in a city, where street improvements are continually being made and sewers, gas and water pipes and service connections are being laid and property owners are permitted to occupy portions of streets with building material, there are frequent obstructions to travel, and in other places defects and obstructions to be avoided are not uncommon. If such a presumption of law can be said to exist in any case, it can rest only on the general rule that public officials charged with a duty are presumed to have performed it. Such a presumption has sometimes been said to exist where the action was against a municipality charged with the duty of exercising reasonable care to keep its streets reasonably safe. It was considered in *City of Chicago* v. *Babcock,* 143 Ill. 358, *City of Beardstown* v. *Smith,* 150 id. 169, *City of East Dubuque* v. *Burhyte,* 173 id. 553, and *City of Spring Valley* v. *Gavin,* 182 id. 232, that one using ordinary and reasonable care and diligence to avoid danger may assume that the street is in a reasonably safe condition for travel. In two of those cases the injuries occurred in the night time and in another the injury was caused by the breaking of a defective board in a sidewalk, and none of them have any proper application to this case, where the action was

not against the city primarily charged with the duty of using reasonable care to keep the streets reasonably safe for travel. As between individuals this court for a considerable period has regarded the question as to what one may presume another will or will not do, as a guide to his own action, as a question of fact and not of law.

The statutory provision that this court shall review cases coming from the Appellate Court on questions of law, only, has led to a clearer discernment and demarkation of the line between presumptions of law and what one may presume as a matter of fact, than formerly existed. Numerous examples are to be found in the decisions, and one of them relates to the identical question as to what presumptions may be indulged as a matter of law as between individuals. In *Chicago, Rock Island and Pacific Railway Co.* v. *Austin,* 69 Ill. 426, it was held error to refuse an instruction that the defendant's servants in charge of an engine had a right to assume that the deceased was exercising care and caution to keep himself out of danger, and, if he was at a safe distance, that he would remain at such safe distance until he manifested a purpose to place himself in dangerous proximity to the track; but in *Illinois Central Railroad Co.* v. *Slater,* 139 Ill. 190, the court said, concerning a refused instruction of exactly the same nature, that it was improper for the court to say, as a matter of law, that the engineer might presume anything. In *Louisville, New Albany and Chicago Railway Co.* v. *Patchen,* 167 Ill. 204, it was held not error to refuse an instruction to the same effect, and the court said that the tendency of the decisions had been that the matters and things stated in the instruction which the servants of the railroad company might, as a matter of law, assume, were questions of fact for the determination of the jury. To the same effect are *Chicago and Alton Railroad Co.* v. *Sanders,* 154 Ill. 531, *Peirce* v. *Walters,* 164 id. 560, and *North Chicago Street Railroad Co.* v. *Irwin,* 202 id. 345.

The Appellate Court considered that if the sixth instruction had not been practically meaningless and harmless it would have been erroneous, but took the view that if ordinary care of the plaintiff would have given him knowledge of the defect in the roadway such ordinary care would negative the absence of such knowledge, and as the instruction only authorized him to presume anything in the absence of such knowledge, it meant nothing. That analysis of the instruction clearly shows its confusing and misleading character even if a correct rule of law had been stated, but the instruction declared as a rule of law what was for the determination of the jury as a matter of fact and was prejudicial for that reason. The conditions were such that the defendants had a right to have the jury carefully instructed in order that a proper conclusion might be reached as to whether the plaintiff was negligent in driving into the hole in the street.

The judgments of the Appellate Court and superior court are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*

Mr. Justice Farmer, dissenting:

The judgments of the Appellate and superior courts are reversed upon two grounds: (1) Because it was not proved on the trial that the place where the injury occurred was within the city limits when the ordinance of 1858 was adopted, and in the absence of such proof no duty was shown to rest upon the Chicago City Railway Company to keep the portion of the street occupied by its railway in repair; and (2) because instruction 6 given on behalf of plaintiff below was erroneous. I do not agree that a reversal is justified on either ground.

It is undisputed that the injury occurred on Archer avenue. The ordinance of 1858 authorized the construction and operation, by three individuals named, of a single or double-track street railway on Archer road (avenue) to the

then city limits, and required them to keep the portion of the street occupied by their railway in repair. The term of the grant was twenty-five years. The ordinance provided that if the persons named in it, their associates or successors, should become incorporated, the corporation should succeed to the rights and privileges granted by the ordinance. By an act of the legislature in 1859 the three persons named in the ordinance, and one other, were created a body politic and corporate for the term of twenty-five years, with authority to construct and operate street railways within the present or future limits of the city. The act provided that all rights and privileges granted by the ordinance of 1858 should pass to and vest in the corporation. By an amendatory act of 1865 the duration of the life of the corporation was extended to a period of ninety-nine years, and it was authorized to construct and operate street railway tracks along such streets, within the present or future limits of the city, as the council had authorized or might from time to time authorize and upon such terms and conditions as the council might prescribe. It was stipulated on the trial, "for the purpose of obviating proof and bringing witnesses," that at the time the injury occurred the railway company was, and had been "for many years" prior to the accident, operating a double-track street railway at the place where the injury occurred. So far as appears from this record it was operating under the franchises granted by the acts of 1859 and 1865. That at the time the ordinance of 1858 was passed the place of the accident was within the city limits was not directly proved, but I do not agree with the court that there was no proof from which any such inference should be drawn. It seems to me in all fairness that one of the principal objects, if not the principal object, for making the stipulation was to obviate that very proof. The ordinance of 1858 was introduced to prove the duty of the company with reference to keeping the street occupied by its tracks in repair. The

place where the injury occurred was admitted to be in the city limits, and the admission that the company had for many years prior to that time been operating a street railway at that place, justifies, in my opinion, the inference that it was operating by virtue of the license granted and the terms imposed by the ordinance.

It seems to me the criticism of the sixth instruction given for plaintiff is far-fetched and unsound. It is perhaps awkwardly worded but contains no erroneous statement of the law, nor are the propositions in it so stated as to confuse or mislead the jury. The instruction embraces two propositions of law: (1) That the jury must believe, from the evidence, that plaintiff was in the exercise of ordinary care for his safety; and (2) that as a matter of law he had a right to presume the street was in a reasonably safe condition for travel. It is the second proposition which the court holds erroneous. I had not supposed the correctness of the proposition open to question. In his work on Municipal Corporations (vol. 4, 5th ed. sec. 1698,) Judge Dillon states the rule to be that streets and sidewalks are for the benefit of the public, and all have the right, in using them, to asume that they are in an ordinarily good condition and to regulate their conduct on that assumption. That statement of the rule has been approved by this court in *City of Spring Valley* v. *Gavin,* 182 Ill. 232, *City of East Dubuque* v. *Burhyte,* 173 id. 553, *City of Beardstown* v. *Smith,* 150 id. 169, and *City of Chicago* v. *Babcock,* 143 id. 358. The opinion of the court says those cases are not applicable; that in two of them the injury occurred at night and in another it was caused by the breaking of a defective board in a sidewalk, and that none of them are in point here because in those cases the actions were brought against cities, which are primarily charged with the duty of using reasonable care to keep their streets in safe condition for travel. I confess my inability to comprehend the distinction made. True, it is primarily the duty of a city to ex-

ercise reasonable care to keep its streets safe for ordinary travel, but where it permits the use of its streets for street railway purposes and imposes the duty upon the railway company of keeping in repair and safe condition those parts of the streets occupied by the railway tracks, a traveler over the streets has as much right to assume that the railway company will perform its duty in this respect as that the city would perform its duty. It does not seem to me reasonable to say the presumption in such cases will obtain against the city but not against the railway company. Certainly the Illinois cases cannot be distinguished because in some of them the injury occurred in the night time. The same presumption obtains in the daytime as in the night time, but there may be a difference as to what conduct will constitute reasonable care in daytime or in night time. In *Pettingill* v. *City of Yonkers,* 116 N. Y. 558, (15 Am. St. Rep. 442,) it was held a person using a public street in the daytime or night time may rely upon the assumption that the city has performed its duty in keeping its streets in a safe condition. In a note to *Learner* v. *Philadelphia,* 21 L. R. A. (N. S.) 614, will be found a large number of cases from various States in which the rule has been applied as laid down by Judge Dillon. The right to presume that the street was in a reasonably safe condition for travel did not absolve plaintiff from the duty of exercising reasonable care for his safety, and this is so stated in the instruction. It seems to me that upon this question the opinion unsettles, or at least casts doubt upon, a rule of law never heretofore questioned in this State.

Upon the whole record no meritorious reason appears to me which justifies a reversal of these judgments, and I think they should be affirmed.

Mr. Justice Carter: I concur in the foregoing dissenting opinion of Mr. Justice Farmer.