## George C. Moore, Defendant in Error, v. Walker D. Hines, Agent, Plaintiff in Error.

1. RAILROADS—*duty imposed by "stop" signs at highway crossings.* In a collision case, where the crossing in question was obscured by freight cars, and where defendant claimed that plaintiff's failure to stop immediately at the point where the "Stop" sign was erected, was conclusive evidence of contributory negligence under Rev. St. ch. 121, secs. 145a, 145b [Callaghan's 1920 Stat. ¶¶ 10000(a), 10000(b)], relating to the erection of such signs, and providing also that persons controlling the movement of self-controlled vehicles shall make a full stop at grade crossings at which "Stop" signs are placed, the judgment for plaintiff was not disturbed where it appeared that plaintiff stopped at about 20 feet from the sign; that there was no evidence to show who erected the sign in question,

and that it did not conclusively appear that had plaintiff stopped directly at the sign he would have been able to see the approaching train a sufficient distance away to have avoided the injury.

2. RAILROADS—*what assumptions justified by person who has stopped, looked and listened at crossing.* A person riding in an automobile who in approaching the railroad crossing in question and finding his view obstructed, after he had stopped and looked and listened for an approaching train, had a right to assume that the duty imposed by law of sounding a bell or blowing a whistle would be performed.

3. RAILROADS—*negligence and contributory negligence as questions of fact.* Whether the defendant railroad company performed the duty imposed by law to sound a bell or blow a whistle, and whether plaintiff was guilty of contributory negligence, were questions of fact for the jury to determine.

4. PLEADING—*what is not a variance.* The denial of a motion to exclude the evidence in a collision case, because each count alleged that defendant's engine struck plaintiff, knocked him down and threw him to the ground, while the evidence showed that the engine struck an automobile in which plaintiff was riding and did not strike him, knock him down or throw him upon the ground, was not error, where it appeared that while after the accident plaintiff was sitting in the debris of the automobile and his body was probably not actually touching the ground, the law of variance is not so extremely technical that because some piece of the automobile may have interposed between plaintiff's body and the ground, the allegation that he was thrown was not established by the proof.

5. DAMAGES—*what evidence admissible.* In an action for damages to an automobile in a collision with a railroad train, it was not error to allow several witnesses to testify as to the value of the automobile after it had been removed from the tracks by the train crew, because one witness testified that he noticed a difference in the condition of the automobile after its removal from what it was before such removal, as, if in so removing the automobile it was necessary for the crew to further damage it, such damage was the direct result of the original collision.

Error to the Circuit Court of Douglas county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1921. Affirmed. Opinion filed May 4, 1921. *Certiorari* denied by Supreme Court (making opinion final).

JOHN H. CHADWICK, EDWARD C. CRAIG, DONALD B. CRAIG and FRED H. KELLY, for plaintiff in error; HOMER T. DICK, of counsel.

W. Thomas Coleman, for defendant in error.

Mr. Justice Eldredge delivered the opinion of the court.

At the March term, 1920, of the circuit court of Douglas county, defendant in error obtained a judgment for the sum of $5,000 against plaintiff in error as damages for injuries received on account of a collision between an automobile, in which defendant in error was riding, and a freight train, operated by plaintiff in error on the tracks of the Chicago and Eastern Illinois Railroad Company. To review that judgment plaintiff in error has sued out this writ of error.

The original declaration consists of five counts to which was added later one additional count. The first count charges negligence on the part of plaintiff in error in the failure to give the statutory signals of ringing the bell or blowing the whistle upon approaching the public highway; the second and third charge general negligence in the operation of the train; the fourth charges that upon the passing track reaching to within 10 feet of the north side of the public highway and extending northward for a distance of 80 rods was a string of box cars, 15 feet high, and closely joined together, so that it was impossible for any one on the public highway approaching the crossing from the west to see the approach of a train from the north on the southbound main track, and that plaintiff in error was negligent in failing to ring the bell or blow the whistle on the engine approaching the highway intersection in accordance with the statute; the fifth is substantially the same as the fourth except that general negligence only is charged; the additional count is substantially the same as the first count except that it contains the allegation that defendant in error was injured while driving an automobile over

said crossing and also contains an allegation in regard to the damage to the automobile.

At a point about three-quarters of a mile southwest of the City of Tuscola, a public highway called the Ocean to Ocean Highway runs east and west. Three tracks of the Chicago and Eastern Illinois Railroad Company crossed this highway, running in a southwesterly direction. The track farthest west was the passing track, the next one the southbound main track, and the farthest east the northbound main track. On August 22, 1919, a string of 85 box cars stood on the passing track extending northwesterly from a point 10 feet north of the highway. Twenty feet west of the center of the passing track there was a sign on a post with the word "Stop" printed thereon. Shortly after 12 o'clock noon on the day mentioned, defendant in error approached this crossing in an automobile. As he drew near he noticed the long line of box cars standing upon the passing track. He stopped his automobile about 40 feet west of the passing track to ascertain if these box cars were moving or standing still, or connected with any train. He examined them for two or three minutes and in this he is corroborated by the testimony of disinterested witnesses. He testified that after he discovered that this long line of box cars was not connected with any train, and was not moving, and as he could see no train approaching on the other tracks from any direction, and heard no signals, he started his automobile and proceeded slowly towards the crossing; that he neither heard nor saw any approaching train, and heard no warning signals of any kind; that just as his car got on the southbound main track, a freight train running south struck his automobile, whereby it was substantially destroyed, and he himself injured.

The assignment of error most strongly urged by plaintiff in error for a reversal of judgment is that the evidence conclusively shows that defendant in error

was guilty of contributory negligence in that he did not stop, look and listen for an approaching train, and did not stop *immediately at* the point where the "Stop" sign was erected. The evidence conclusively shows that defendant in error did stop, look and listen for an approaching train; that his view of the tracks toward the northwest was obstructed by the long line of box cars on the passing track. Several witnesses who lived in the immediate vicinity of this crossing testified that no whistle was sounded nor bell rung on the engine of this train as it approached the crossing. The train crew testified that the whistle was sounded at the usual whistling point, and the bell was being rung all the time by an automatic appliance. The evidence is in conflict as to whether any signals were given of the approach of the train. Plaintiff in error cites sections 145a and 145b of chapter 121, Rev. St. [Callaghan's 1920 Stat. ¶¶ 10000(a), 10000(b)], which provide that it shall be the duty of the highway commissioners to erect and maintain such signs as the Public Utilities Commission may prescribe alongside the roadway on the highway at a distance of 300 feet on either side from every grade crossing located in the various townships or road districts of the State designed as extrahazardous by the Public Utilities Commission. Also that at all grade crossings at which "Stop" signs are placed the person controlling the movement of any self-propelled vehicle shall bring such vehicle to full stop at such "Stop" sign before proceeding over the railroad tracks. It is the contention of counsel for plaintiff in error that because defendant in error did not stop immediately at the point where the "Stop" sign was located, but about 20 feet therefrom, he failed to obey the statute, and was therefore guilty of contributory negligence. In answer to this contention it might be suggested that if the statute imposes such a duty upon a traveler in an automobile, the duty is one created by the act of the Public Utilities Com-

mission. There is no evidence tending to show who erected the "Stop" sign in question or by what authority it was erected and there was nothing on the sign to indicate by what authority it had been erected. Moreover, the evidence does not conclusively show that if defendant in error had stopped his car directly at the "Stop" sign that he would have been able to have seen the approaching train within a sufficient distance to have avoided the injury. The rules of law governing the act of a person approaching a railroad crossing where the view is unobstructed and if he had looked he could not have helped to have seen the approaching train, and also that class of cases where a person approaching such crossing actually sees the train and tries to cross in front of it, have no application to the facts which appear in this case. It is undisputed that the approach of the train was almost completely obstructed by the long line of freight cars standing upon the passing track. It is not contradicted that defendant in error stopped his car 40 feet from the crossing in order to ascertain whether any train was in fact approaching. On the question of whether any bell was rung or whistle sounded, several disinterested witnesses, living in the vicinity of the crossing, corroborated him in the statement that no such signals were given. Defendant in error, in approaching this crossing and finding his view obstructed, after he had stopped, and looked and listened for an approaching train, had a right to assume that plaintiff in error would perform the duty imposed upon it by law of sounding the bell or blowing the whistle to give warning of the approach of the train. Whether it performed this duty and whether defendant in error was guilty of contributory negligence were questions of fact for the jury to determine. *Henry v. Cleveland, C., C. & St. L. Ry. Co.,* 236 Ill. 219; *Rosenthal v. Chicago & A. R. Co.,* 255 Ill. 552; *Elgin, J. & E. Ry. Co.*

v. *Hoadley*, 220 Ill. 462; *Heidenreich v. Bremner*, 260 Ill. 439.

At the close of the evidence offered by defendant in error and at the close of all the evidence the plaintiff in error made motions to exclude the evidence of defendant in error on the ground of variance, for the reason that it is alleged in the declaration and each count thereof that the engine or cars struck defendant in error, knocked him down, and threw him upon the ground, while the evidence shows that the engine struck an automobile in which he was riding, and did not strike him, knock him down or throw him upon the ground, and the case of *Wabash R. Co. v. Billings*, 212 Ill. 37, is cited in support of the motion. In the *Billings* case it appears that the declaration charged that the plaintiff's buggy was struck by a train and he was then and there thrown out and injured, and the proof showed that he was not thrown from the buggy until the horse had run nearly 100 feet from the crossing; that just before the car struck the buggy, plaintiff slapped the horse with the lines, and the horse started at a faster gait, that when the buggy was struck plaintiff lost his balance and was thrown to the north edge of the seat, when he let go of the lines and grabbed hold of the seat with his left hand; that he was not hurt or thrown out at that place, but the collision threw him off his balance and the horse ran away; that the horse ran upon a grass plot between the sidewalk and the curbing west of the crossing and ran back into the driveway 80 or 100 feet west of the railroad tracks, and that in passing over the curb the buggy dropped 16 or 18 inches into the gutter and plaintiff was thrown out onto the brick pavement. It was held that the variance between the declaration and the proofs having been specifically pointed out, it became the duty of the plaintiff to amend the declaration to meet the variance, which the plaintiff failed to do, and therefore failed to sus-

tain the cause of action charged in the declaration.

In the case at bar, no one actually saw the accident at the moment it occurred. After the accident defendant in error was still in the automobile but the automobile was demolished, the wheels were crushed from under the body, and it was in such a condition that it was beyond repair, and only had a value of about $25 as junk. The train crew testified that defendant in error, when found after the accident, was conscious, and gave the conversation had with him at that time, while other witnesses testified that he was unconscious. The surgeon in Tuscola to whom he was taken immediately after the accident testified that when he was brought to his office he was in a subconscious condition—partly conscious—and asked some questions that were intelligent and others that were not. He had a cut over his head and over his left eye, and was injured over his ribs on the left side; the hip was injured, and the tissues were badly bruised. He had a fracture of the upper border of the acetabulum, commonly called the head of the socket in which the femur, the long thigh bone, rests, with a displacement of the fragment. No witnesses testified that the engine or cars did not strike defendant in error, and his injuries were such that the jury might readily have concluded that they were the result of a direct collision between his body and the engine or cars. It is true when found he was sitting in the debris of the demolished car, and probably was not actually touching the ground, but the law in regard to variance is not so extremely technical, that because some piece of the automobile may have interposed between his body and the ground that the allegation that he was thrown to the ground was not established by the proofs.

The train crew pulled the automobile off of the tracks, and it is claimed that the court erred in allowing several witnesses to testify as to the value of the car after it had been removed from the tracks by the

train crew, because one of the witnesses testified that he noticed a difference in the condition of the car after it was removed from the tracks from what it was before it was removed. We consider this contention without merit. The damaged car had to be removed from the tracks, and if in doing so it was necessary for the train crew to further damage it, such damage was the direct result of the original collision. There was no proof that the car had any greater value in the condition it was while lying on the tracks than after it had been removed therefrom.

Numerous errors are urged in regard to the admission of evidence and the giving of instructions on behalf of defendant in error. It would make this opinion too lengthy to discuss each one of these in detail, but in regard to which we are of the opinion that no error was committed sufficiently harmful to plaintiff in error to justify a reversal of the judgment.

The judgment of the circuit court is affirmed.

*Affirmed.*